ADAM WEAVER, AND THE L. L. & G. RAILROAD CO.,
v. ELIJAH SELLS.

1. MECHANIC'S LIEN; *How it may be Acquired.* Where a vendor sells lumber on credit without any reference to what shall be done with it, and the vendee afterwards uses the lumber in constructing a building on land belonging to himself, the vendor has no lien on the said land and building for the purchase-money which will be prior to the lien of a subsequent mortgagee, nor in fact has he any lien. In order for a vendor to obtain a lien in such a case he should sell and furnish the lumber with the *intention and understanding* that it should be used in constructing the building.

2. VESTED RIGHTS; *Mechanic's Lien.* Whenever a mechanic's lien is created for material furnished, the right to the lien becomes a *vested* right at the time the material is so furnished, and it is not within the power of the legislature to afterwards destroy such right by repealing the statute under which the right has accrued or otherwise.

*Error from Douglas District Court.*

TWO ACTIONS were brought and prosecuted in the district court against John Doak and J. D. Thomas, as partners. One of said actions was by *Elijah Sells,* as plaintiff, to fore-

through lands occupied by a fence, and such fence can be removed to the line of such highway so as to make a good fence, it is the duty of the land-owner to so remove it; and that in such case the damages recoverable on account of such fence would be a just compensation for such removal, and the depreciation (if any) in the value of the fence by reason of the removal.—REPORTER.]

close an alleged mechanic's lien for sundry bills of lumber sold by him to said Doak & Thomas, between May 26th and October 14th 1870, amounting to $1,509.67, for which *Sells* made and filed, in March 1870, the statement and affidavit required to secure the lien given by the lien law as amended by §§ 21 to 26, ch. 87, laws of 1870. *Sells* in his petition alleged that the lumber sold by him to D. & T. "was used in the construction" of a certain building erected "on Lots No. 5, 6 and 7 in block No. 12 in the village of Prairie City in said county of Douglas," and he demanded judgment for said sum of $1,509.67, and that the same be decreed to be lien on said lots and building. The other of said actions was by *Adam Weaver*, as plaintiff, to foreclose a mortgage on said lots given by said Doak & Thomas on the 2d of January 1871 to secure an indebtedness of $3,500. *Weaver* also made the *L. L. & G. Railroad Co.* a party defendant, as having or claiming some interest in the premises. (Several other parties were also joined as defendants, but they made no complaint of the judgment and decree of the court.) The *L. L. & G. Rld. Co.* answered, alleging that it claimed a lien on said lots under and in virtue of a mortgage thereon given July 12th 1871 to secure an indebtedness of $489.49. The two cases came on to be tried at the March Term 1872, and were so far consolidated and tried as one action as to determine the priority of the several liens claimed by the respective plaintiffs and defendants. The court found that Doak & Thomas were indebted to *Sells, Weaver*, and the *L. L. & G. Railroad Co.*, respectively, in the sums principal and interest respectively claimed by them, and made and entered a decree "that said *Sells* by virtue of his said mechanic's lien has and holds the first and prior lien upon said lots; that said *Weaver* by virtue of his said mortgage has and holds a second lien upon said premises, next in priority to the lien of said *Sells*, and that the *L. L. & G. Railroad Co.* by virtue of its said mortgage has and holds a third lien upon said premises next in priority to that of said *Weaver*." Said decree also directed that the property be sold, and that the proceeds of sale be applied, first,

to the payment of the costs of said actions and of said sale, and then to the payment of said claims in the order of priority designated. *Weaver* and the *Railroad Company* excepted, and now unite as plaintiffs in error and bring the case here for review. The "exception," as stated in the record, is as follows: "And the said *Adam Weaver*, and the *Leavenworth, Lawrence & Galveston Railroad Co.*, by their said attorneys, except to the ruling and finding of the court as to the priority of the lien of said *Elijah Sells* over their said liens."

*Thacher & Stephens*, for plaintiff in error:

1. This case presents but a single question, which arises upon the exception of the plaintiffs to the judgment of the court below in deciding and adjudging that the defendant Sells had a *first* lien, and was entitled to be first paid out of the proceeds of the sale of the property decreed to be sold. As to whether said Sells has *any lien*, these parties are not in a position to question; the other parties having acquiesced, they of course cannot question it, and the only question that arises is as to whether he has *a prior lien* to the plaintiffs in error.

The findings of fact show that Sells had furnished lumber and materials to Doak & Thomas; that Sells, to secure payment for said lumber and materials on the 30th of March 1871, and within six months after the furnishing of said lumber and materials, and completion of the building on said premises then owned by said Doak & Thomas, filed his mechanic's lien in the office of the clerk of the district court on the property in suit, and on which property the said materials were used in constructing improvements. There is a finding that on the 2d of January 1871 the owners of the real estate, Doak & Thomas, to secure a promissory note executed and delivered a mortgage upon said real estate, which mortgage was duly recorded, and that the plaintiff, before the commencement of the action, became the owner of the note and mortgage. There is also a finding that on the 12th of July 1871 defendant Doak executed to the L. L. & G. Railroad Co. a mortgage upon said property, which mortgage was duly recorded.

Upon these facts (for it is immaterial to consider others so far as the question at issue is concerned,) the court adjudged that Sells had a lien upon the property mentioned in the decree, prior to the respective liens found by the court in favor of the plaintiffs in error. The liens of plaintiffs in error are by virtue of mortgages, conveyances by the owner, and good to pass the interest therein stated; their validity and good faith are unquestioned. What right has Sells? On October 14th 1870, he had furnished the owners building materials to the extent of his demand, which materials were used in constructing a building, or otherwise, upon the premises in question. He claims that at that date the law gave him a remedy for the collection of his demand, by the filing of papers in the nature of a mechanic's lien. The right to file such lien, and charge the property, was purely a statutory right; it existed solely by virtue of the statute, and when the statute was removed the right went with it. (*Dollner v. Rogers,* 16 Mo., 340; *Cook v. Heald;* 21 Ill., 429.) The law of 1870, page 177, provides that "any mechanic, or other person, who shall *under contract* with the owner of any tract or piece of land, etc., perform labor or *furnish materials for erecting, altering, or repairing, any building,* or the appurtenances of any building, etc., shall have a lien," etc. In the first place, then, this statute provides for a lien when the party *contracts* to furnish materials for the *specific purpose* of erecting or repairing any building, and it only provides the remedy where the material is furnished *for such purpose.* If he furnishes materials to a party for general purposes, he does not bring himself within either the letter or the spirit of the act, for when the purchaser declares the purpose in order to induce the sale, the party may then count upon his remedy, so long as the statute remains in force. The law having declared this to be a prerequisite to the lien, to-wit, that the materials be "furnished for erecting, altering, or repairing," if they be furnished for a different purpose, or, generally, without a distinctive purpose, the fact that they be afterward put to such use becomes entirely immaterial. It was no part of the in-

ducement to the sale, and can confer no right upon the party furnishing. Both the plaintiff's petition and the finding of fact, concur in the statement, simply, that the lumber *was used* in the construction of a building on the property, but it is nowhere alleged that it was sold or purchased *for such purpose.* If a purchase be for the purpose of selling again, and the party afterward uses the material in erecting a building, at what time does the lien attach? The material may be piled in the vendee's lumber-yard, with no purpose to put it into a building. The vendee may, as in this case, give other parties security on real estate, they parting with their money on the faith thereof. Can he by simply *using* the property so purchased create a lien which shall be held prior to an express incumbrance so taken for value? It would seem that such a construction of the statute would work harshly, and open the door to innumerable frauds. Again, it clearly cannot be claimed that the lien attaches until some purpose is formed of appropriating the material to the purpose of either building or repairing. If such be held to be the rule, then such fact, with the time, is a necessary fact to be alleged and proven. It is a fact necessary to be found that the design at least existed before or at the attaching of the lien, and, in order to have priority to other liens, it should be found to exist before such other liens were created. In *Coates & Davis v. Shorey*, 8 Iowa, 418, it was held that "where lumber is sold from time to time, and no understanding had as to the purpose for which it was to be used, the plaintiff is not entitled to a lien, though the lumber may have been used in the erection of a building." In the case at bar, the items and dates of Sells' claim disclose the fact that his demand for lumber was an open account, running through a considerable period of time. There is neither allegation nor finding that it was purchased for the purpose of building, nor that there was an understanding that it should be so used.

2. The statute under which the lien was filed, was totally repealed by the laws of 1871, page 155, § 10, and the repealing statute does not except any cases from its operation. The

provision in relation to mechanic's liens, is one providing a remedy. No vested rights can be acquired under it until steps are actually taken to put the lien on record; and no proceedings can be pursued under a repealed statute, even though commenced before the repeal, unless saved by special exception. (Dwarris on Statutes, 153; *Whitney v. Frisbie*, 9 Wallace, 181.) The statute of 1871 not only repealed the prior law, but lessened the time within which the party, in case of a lien, should file his papers. The act of 1871 went into operation on the 23d of March 1871, and Sells filed his lien on the 30th day of March thereafter. There was at that time no law authorizing the filing of a lien, after two months from the time the materials were furnished and building completed. The petition of Sells alleges, and the court finds, that the time of filing was within *six* months, but does not find that it was within *two* months of such period. It is however found that the lumber was all furnished prior to October 14th 1870, some five months prior to filing his papers. The right to file his lien existed under the law as it before stood, and not having been exercised under that law, fell with it, at the time the law of 1871 went into operation. The case of *Butler v. Palmer*, 1 Hill, 324, is precisely in point and decisive of the case. In the case of *McCrea v. Craig*, 23 Cal., 525, the precise question was involved; and although the court held there that the repealing act had saved the rights of the lienor, by special exception put, it was admitted, and stated to be the law, that but for the exception saving a remedy to the lienor, that his rights would be lost by a repeal of the statute. Nor is the repeal of the law an impairing of the obligation of a contract. The law simply gave a remedy, and it was entirely competent for the legislature to change the remedy, to limit it, or wholly to take it away. See Dwarris on Statutes, 472; *Sturges v. Crowninshield*, 4 Wheaton, 200.

The party must allege, and the court must find, facts sufficient to warrant the judgment. As against these plaintiffs in error, neither has been done. Although the other defend-

ants may have acquiesced and been concluded, these plaintiffs in error are entitled to have the judgment rectified in this court, and have the lien which was adjudged against the property by the acquiescence of the defendants below subordinated to the liens of both of these plaintiffs in error. The whole facts being found, and there being no dispute thereon, this court will render such judgment as the court below should have rendered, declaring the lien of Adam Weaver a first lien upon the property, the lien of the L. L. & G. Railroad Co. the second lien thereon, and the remaining claims to be liens upon the property in the order directed by the court below.

*John Hutchings,* for defendant in error:

1. The only question raised in this case by plaintiffs in error is upon the priority of the lien of Sells over those claimed by them. The validity of Sells' lien is conceded, and is not attacked, nor could it be upon the record as it now stands.

The only exception taken by the plaintiffs in the court below, was to its ruling that the lien of defendant Sells was prior to theirs. No exception was taken to the findings of the court that Sells was entitled to a lien, or that such finding, as matter of law, was not sustained by the facts in the case. The plaintiffs in error by not excepting to such finding are deemed to have waived any error therein, if any. (*Small v. Douthitt,* 1 Kas., 335; *Lalonde v. Collins,* 5 Kas., 361.) No exception having been taken to the decision of the court adjudging a lien, but only to the decree of priority, the only question for the consideration of this court is, whether the judgment of defendant in error or those of plaintiffs in error should first be paid out of the proceeds of the sale of property. On this point there is no room for doubt. The materials for which the defendant claims his lien were furnished October 14th 1870; and if he was entitled to a lien at all it commenced from that date. (Laws of 1870, page 177, § 21.) The mortgages of plaintiffs were not executed for months

afterward. The mortgage to the Railroad Company was not executed until July 12th 1871, nearly four months after the statement for defendant's lien was filed.

2. There is nothing in the record that shows that the statement was not filed within the two months. There is no finding as to when the building was completed, and it is most likely not to have been completed till within two months previous to March 30th 1871, when the statement was filed. The court will not presume error. If however the building was completed more than two months before the filing of the statement, and more than two months previous to the 23d of March 1871, (the date of the repeal of the law of 1870, and the time when the law of 1871 took effect,) then Sells had the right to file his statement within the six months under the law of 1870. The law of 1871 was but a continuation of the law of 1870, changing only the time in which the statement of lien should be filed. Its effect was not to destroy any remedies, but simply to make a change in the law which should operate prospectively. (See Gen. Stat., page 999, § 1.) The provision fixing the time within which a statement should be filed is in the nature of a statute of limitation; and a change in the time which would cut off all remedy, would not operate upon existing causes of action. The time of filing the statement would be limited by the statute in force when the change was made. *Auld v. Butcher*, 2 Kas., 156; Cooley's Const. Lim., 366.

3. We contend also that the right to a mechanic's lien on real estate for labor performed, or materials furnished in the erection of a building thereon, under the statute, was a vested right, and could not be taken away by the repeal of such statute. The statute provides that whoever performs such labor or furnishes such materials *shall have a lien*, and upon the strength and credit of this statutory declaration the materials in this case were furnished. There is a wide distinction between the mechanic's lien law, and an ordinary remedial statute, a statute employed to "enforce a right or redress an injury." The lien law says to A., "If you will let B. have

materials with which to build a house upon his land, you shall have a lien upon the land for the price of such materials." Upon the strength of that promise A. is induced to let B. have the materials which, without such promise, he would not have done. If a repeal of that law after the materials are furnished should have the effect to deprive A. of that lien, could it be construed otherwise than as impairing the obligation of the contract? See Cooley's Const. Lim., 290, note 4; and page 291, notes 1 and 2.

4. The objection that the materials were not furnished by the defendant for the express "purpose" of being used in the construction of the building on the property in question cannot be made available here. No exception was taken to the findings of the court below on this point. There was no finding that the materials were furnished for any other purpose, and none asked for. This question is raised here for the first time. The only question raised below was simply as to *priority*, (the lien of defendant being conceded.) But the facts found by the court, as shown by the record, are sufficient to justify the conclusion of law that the defendant was entitled to his lien. The facts that the materials were furnished to Doak & Thomas, and that they were used in the construction of the building by them, are sufficient to justify the conclusion that they were bought for that purpose. It is not necessary that there should be an express contract as to how the materials should be used. *Coates & Davis v. Shorey,* 8 Iowa, 418.

The opinion of the court was delivered by

VALENTINE, J.: This case involves the construction of § 630 of the civil code as amended by ch. 87, Laws of 1870, page 177, § 21. Said amended section reads as follows:

"SEC. 630. Any mechanic or other person who shall, under contract with the owner of any tract or piece of land, his agent, trustee, contractor or sub-contractor, or under contract with the husband or wife of such owner, perform labor or furnish materials for erecting, altering or repairing any building or the appurtenances of any building, or any erec-

40—10 KAS.

tion or improvement, or shall furnish or perform labor in putting up any fixtures or machinery in or attached to any such building or improvement, or shall plant, or plant and grow successfully, a hedge fence, or shall build a stone fence on any such tract or piece of land, shall have a lien upon the whole tract or piece of land, the buildings and appurtenances, in the manner herein provided, for the amount due to him for such labor or materials, fixtures or machinery; such liens shall be preferred to all other liens and incumbrances which may attach to or upon such lands, buildings or improvements, or any or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, or the making of such repairs or improvements."

This section so far as it has any application to this case, may be read as follows: "Any person who shall under contract with the owner of any tract or piece of land * * * furnish materials for erecting * * * any building * * * shall have a lien upon the whole tract or piece of land, the buildings and appurtenances, in the manner herein provided, for the amount due to him for such * * * materials." The question now presented under this statute is as follows: Where a vendor sells lumber on credit, without any reference to what

1. Lien law construed. Right of vendor to a lien for lumber.
shall be done with it, and the vendee afterwards uses the lumber in constructing a building on land belonging to himself, has the vendor a lien on said land and building of the vendee for the purchase-money which lien will be prior to the lien of a subsequent mortgagee? We think not. In fact, we do not think that he has any lien at all. In order for the vendor to obtain a lien in such a case he should sell and furnish the lumber *for* the building. He should sell and furnish it with the *intention* or *understanding* that it should be used in constructing the building. If he should furnish it with the understanding that it should be sold again as merchandise—if he should furnish it upon the personal credit of the vendee alone, without intending or expecting to obtain any security by virtue of a mechanic's lien, we suppose it would hardly be claimed that a mechanic's lien would be created even though the vendee might afterward

use the lumber in erecting a building. The right to the lien must be created at the time or before the material is furnished. It cannot be created afterward. It is the furnishing of the material *under a contract,* with the *intention and understanding that it shall be used in erecting the building,* that creates the lien. (See the authorities cited in the brief of counsel for · plaintiffs in error.) When such lien is created, then "such lien shall be preferred to all other liens and incumbrances which may attach to or upon such lands, buildings, or improvements, or any or either of them subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, or the making of such repairs or improvements." (Laws of 1870, page 177.)

Whenever a mechanic's lien is created for material furnished, the right to the lien becomes a *vested* right at the 2. Mechanic's time the material is so furnished, and it is not lien, once created, is a within the power of the legislature to afterwards vested right. destroy such right, by repealing the statute under which the right has accrued or otherwise. It is true, the legislature may shorten the time for filing the statement of the lien; (see amended § 633 of the code, laws of 1870, page 170, § 24; laws of 1871, page 254, § 3;) but in such a case the legislature would be bound to give a reasonable time in which to file the statement or their act would be void.

In the case at bar there is nothing that shows that the lumber sold by the plaintiff Sells was sold with any intention or understanding that it was to be used in the building of defendants Doak & Thomas, or in any other building. There is not even an allegation in the petition of the plaintiff Sells that the lumber was sold or furnished with any such intention or understanding. Therefore we think the court below erred in its conclusion of law and judgment, that "Elijah Sells by virtue of his said mechanic's lien 'has and holds the first and prior lien upon said premises, in the petition of said Sells described, to the amount of his said claim, and that Sells should be first paid out of the proceeds of the property." The writer of this opinion is unable to understand with any

degree of certainty what was intended by or understood from the peculiar exception taken by the plaintiffs in error to the rulings of the court below concerning said lien; and counsel differ as to what its meaning was intended or understood to be. But the majority of this court is of the opinion that said exception is sufficiently definite and certain, and that it sufficiently raised the question of the validity of said supposed lien in the court below, so far as it affected the plaintiffs in error. The judgment of this court must therefore be as follows: The judgment of the court below, so far as it adjudges that the said Elijah Sells has a lien on said premises prior to the lien of Adam Weaver, and prior to the lien of the Leavenworth, Lawrence and Galveston railroad company, must be reversed; but the judgment of the court below is not in any other respect disturbed; and the cause is remanded with the order that the court below render judgment on its findings in accordance with this opinion.

All the Justices concurring, except as above stated.